FILED

2024 Apr-23  AM 10:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## <u>WESTERN DIVISION</u>

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **7:24-cr-00076-ACA-JHE** |
| | ) | |
| **JAHLEO DEVONTA PUGH** | ) | |

## PLEA AGREEMENT

TheGovernment and the defendant, **JAHLEO DEVONTA PUGH**, hereby acknowledge the following plea agreement in this case: The defendant agrees to (i) plead guilty to **COUNT ONE** of the Indictment filed in the above-numbered and -captioned matter; (ii) consent to forfeiture as described in section **XII** below; and (iii) waive certain rights to direct appeal and collateral attack as outlined in section **IV** of this agreement. In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Assistant United States Attorney, agrees to dismiss Count Two at the time of sentencing and recommend the disposition specified below, subject to the conditions in section **VII**.



## TERMS OF THE AGREEMENT

### I.      MAXIMUM PUNISHMENT

The defendant understands that the maximum statutory punishment that may

be imposed for Illegal Possession of a Machine Gun, in violation of Title 18,

United

States Code, Section 922(o), as charged in **COUNT ONE**, is:

      A.      Imprisonment for not more than 10 years;

      B.      A fine of not more than $250,000, or,

      C.      Both A and B;

      D.      Supervised release of not more than 3 years; and

### II.     FACTUAL BASIS FOR PLEA

The Government is prepared to prove, at a minimum, the following facts at the

trial of this case:

On August 18, 2023, WANTF Agent Jonathan Berch received information

from a confidential informant (CI) that the CI could buy a Glock equipped with a

"switch" from someone known to the CI as Jahleo. The CI texted Agent Berch a

photograph of the Glock equipped with the "switch." The photograph depicted the

firearm laying on a bathroom counter with what appeared to be a black male's feet



in the picture. Agent Berch notified ATF TFO Olvey who began a follow up investigation.

In the following days, TFO Olvey and ATF Special Agent (SA) Kris Brantley began researching a Facebook account under the name "Jahleo PUGH." Through multiple law enforcement databases, they were able to determine that the man depicted in pictures throughout the Facebook account was Jahleo Devonte PUGH. In the Facebook account, there were at least two pictures of PUGH holding what appeared to be a Glock firearm. The firearm was equipped with a "switch" in both pictures and strongly resembled the firearm depicted in the photograph provided by the CI.

On August 24, 2023, Cpl. Harrison and Officer McGuire of the Tuscaloosa Police Department (TPD) were patrolling the area of James I. Harrison Jr. Pkwy. when they observed three black males walking down the sidewalk toward a gas station that had been robbed recently. One male was observed to have an extended firearm magazine protruding from his right front pant pocket. Cpl. Harrison slowed down the patrol vehicle to attempt to get out and speak with the three males, but as he turned the vehicle around, all three males took off running. When the three males turned to run, officers observed one of the males holding a long gun. Cpl. Harrison radioed that he was attempting to get out with three black males in The Oakley Apartment complex.



Cpl. Harrison drove around to the "F" Building, which is in the area where the three subjects were last seen, and Cpl. Harrison could see other people in the apartment complex looking in the direction to where they were running. A witness stated that she saw the three subjects run toward the "F" Building but lost sight of them. Cpl. Harrison asked another witness who was sitting on her front door step if she saw anyone running, and she stated that she did see three black males run into the apartment below hers, which was identified as F45.

Officers attempted to make contact with the occupants of the apartment for a few minutes, but no one came to the door. After a few minutes, a female opened the door and then went back into the apartment but later returned holding a small child. She stated that there should not be anyone else in the apartment.

The TPD Cyber Unit showed up and flew two drones around the apartment and stated that they observed a closet door that was partially opened when they started searching but noticed the door was now closed. With consent of the lessee, officers made entry into the apartment and located S.F. and Jahleo Devonta PUGH in the bathroom, while J.H. was located in the bedroom closet. All three males were detained and placed in the back of patrol vehicles.

Officers obtained verbal and written consent to search the apartment from the registered tenant. In the front right bedroom, in a closet under some clothes, officers found a Palmetto AR-15 rifle with one round in the chamber and one round in the

JP

magazine. Officers also located three Glock .40 caliber magazines and an iPhone on the bed. The phone was locked, but the home screen showed a picture of PUGH. In the same bedroom, officers found a distribution amount of marijuana, two vacuum bag sealers, multiple plastic baggies, multiple unused vacuumed sealed bags, seven bottles of Promethazine, and an unopened box of Promethazine. In a small bucket, in the bottom of the hall closet, officers found a Smith & Wesson .40 caliber pistol with an extended magazine (one round in the chamber and eighteen in the magazine). In the back left bedroom bathroom, under the sink, officers found an unloaded Glock .40 caliber pistol with a "switch" attached to the back and a small bag of marijuana behind the toilet.

All firearms came back negative for being stolen. WANTF agents took custody of all the evidence and transported it to TPD headquarters. Officers arrested PUGH for having an outstanding FTA warrant in Tuscaloosa.

ATF TFO Olvey arrived on scene to assist officers with the investigation. In the front right bedroom, TFO Olvey observed and photographed a pair of black shoes with blue lining, a pair of striped sandals, a Taco Bell bag on the floor near a wall, and stains on the baseboard near those items. TFO Olvey reviewed a video on the "Jahleo Pugh" Facebook page, believed to have been posted around 1:30pm on August 24, 2023. In that video, someone wearing striped sandals was filming and handling an AR-15 style rifle with a brown buttstock and brown pistol grip. A banner

JP

across the video read "trade" indicating that the rifle was available for trade. The background of the video showed a Taco Bell bag, black shoes with blue lining, and stains on the baseboard. The Taco Bell bag, black shoes with blue lining, stains on the baseboard, and the carpet were all consistent with what TFO Olvey observed and photographed in the bedroom. The striped sandals worn by the individual in the video also appeared consistent with the striped sandals found on the floor as well.

While on scene, TFO Olvey conducted a post-*Miranda* interview of PUGH. TFO Olvey asked PUGH if he had a cell phone, and PUGH replied that it was "at the crib." He clarified the response by stating, "It was at the house I was at." TFO Olvey showed PUGH the video of the rifle for trade on the "Jahleo Pugh" Facebook page. PUGH acknowledged that it was his Facebook page and advised that it was not him in the video and that he had posted it for someone else. PUGH also acknowledged that he is aware that Glock "switches" make a weapon fire fully automatic. TFO Olvey showed PUGH the picture of the Glock handgun with the attached "switch" that was provided to Agent Berch. PUGH stated that he found the firearm in Montgomery two weeks earlier but that he sold the firearm and didn't know how it ended up in the apartment that he was found in. PUGH acknowledged that he posted the picture to his Facebook page and that those are his feet in the picture.



On September 7, 2023, TFO Olvey obtained a search warrant to search the contents of PUGH's iPhone that officers found in the apartment. The Apple ID associated with the phone was found to be jahleopugh74@icloud.com, and the majority of the accounts associated with the phone (Facebook Messenger, Instagram, Cash App, etc.) were linked to the name Jahleo PUGH. A review of the data extracted from the phone showed messages where PUGH referenced owning a Glock with a "switch" and also trying to sell or trade a Glock with a "switch." The same photograph provided to Agent Berch by the CI was also found on the phone.

The Glock, model 27, .40 caliber pistol bearing serial number RWL012 was examined by ATF and determined to be a firearm that was equipped with a replacement slide cover plate. The slide cover plate was a machinegun conversion device intended for use in converting a semiautomatic Glock-type pistol to fire automatically. The machine gun conversion device was determined to be a combination of parts designed and intended for use in converting a weapon into a machinegun, and in and of itself, is a "machinegun" as defined in 26 U.S.C. § 5845(b) and 18 U.S.C. § 921(a)(24). With the MCD installed, the firearm fired automatically more than one shot, without manual reloading, by a single function of the trigger; therefore, it is a "machinegun" as defined. Further, the MCD bears no manufacturer's markings of identification or serial number as required by 26 U.S.C. § 5842.

JP

The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.

_____
JAHLEO DEVONTA PUGH

## III.    RECOMMENDED SENTENCE

Subject to the limitations in section **VII** regarding subsequent conduct and pursuant to Fed. R. Crim. P. 11(c)(1)(B), the Government will recommend the following disposition:

A.    That the defendant be awarded a two (2) level reduction in the defendant's adjusted offense level, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct. The Government agrees to make a motion pursuant to USSG §3E1.1(b) for an additional one-level decrease in recognition of the defendant's prompt notification to the Government of the intention to enter a plea of guilty. The Government may oppose any adjustment for acceptance of responsibility if the defendant: (1) fails to admit each and every item in the factual stipulation; (2) denies involvement in the offense; (3) gives conflicting statements about the defendant's involvement in the offense; (4) is untruthful with the Court, the Government, or the United States Probation Officer; (5) obstructs or attempts to obstruct justice prior to sentencing; (6) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (7) attempts to withdraw the defendant's plea of guilty for any reason other than



those expressly enumerated in the "Waiver of Right to Appeal and Post Conviction Relief" section of this Plea Agreement;

B.    That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term consistent **within the sentencing guideline range** of the advisory United States Sentencing Guideline range as calculated by the Court at the time of sentencing;

C.    That following the said term of imprisonment, the defendant be placed on supervised release for a period to be determined by the Court, subject to the Court's standard conditions of supervised release;

D.    That the defendant be required to pay a fine in accordance with the sentencing guidelines should the Court determine that the defendant has the ability to pay a fine, said amount due and owing as of the date sentence is pronounced, with any outstanding balance to be paid in full by the expiration of the term of supervised release;

E.    That the defendant be required to comply with the forfeiture provisions set forth in section XII of this agreement; and

F.    That the defendant pay a special assessment of $100.00, said amount due and owing as of the date sentence is pronounced.

## IV.    WAIVERS

### A.    STATUTE OF LIMITATIONS WAIVER

**In consideration of the recommended disposition of this case, I, JAHLEO DEVONTA PUGH, hereby understand, acknowledge, and agree that if this plea agreement is set aside for any reason, I will not assert any defense based on any applicable statute of limitations or the Speedy Trial**



Act, 18 U.S.C. § 3161, *et seq.*, that includes the passage of time from and including the date of this plea agreement until and including the date of entry of any order setting this plea agreement aside.

B.   RIGHT TO APPEAL AND POST-CONVICTION RELIEF

In consideration of the recommended disposition of this case, I, JAHLEO DEVONTA PUGH, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the Court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255, and any argument that (1) the statute(s) to which I am pleading guilty is or are unconstitutional or (2) the admitted conduct does not fall within the scope of the statute(s).

The defendant reserves the right to contest in an appeal or post-conviction proceeding(s) the following:

1.   Any sentence imposed in excess of the applicable statutory maximum sentence(s);

2.  Any sentence imposed in excess of the Guidelines range determined by the Court at the time sentence is imposed; and

3.  Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the United States Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the Government retains its right to appeal where authorized by statute.

I, JAHLEO DEVONTA PUGH, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

_JAHLEO DEVONTA PUGH_

## V.  UNITED STATES SENTENCING GUIDELINES

The defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in *United States v. Booker*, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the Court's discretion and is not required to be within the guideline range. The



defendant agrees that, pursuant to this agreement, the Court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and the defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI.       AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the Government is **NOT BINDING UPON THE COURT,** and that the Court is not required to accept the Government's recommendation. Further, the defendant understands that if the Court does not accept the Government's recommendation, the defendant does not have the right to withdraw the guilty plea.

## VII.       VOIDING OF AGREEMENT

The defendant understands that if the defendant (a) violates any federal, state, or local law or any condition of pretrial release after entering into this plea agreement, (b) moves the Court to accept a plea of guilty in accordance with, or pursuant to, the provisions of *North Carolina v. Alford*, 400 U.S. 25 (1970), (c) tenders a plea of *nolo contendere* to the charges, (d) violates any other term of this plea agreement, and/or (e) does or says anything that is inconsistent with the acceptance of responsibility, the plea agreement will



become NULL and VOID at the election of the United States, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein.  Further, such election will not entitle the defendant to withdraw a previously entered plea.

## VIII.  OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## IX.  COLLECTION OF FINANCIAL OBLIGATION

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to:

- fully disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party;

- promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs;

- identify all assets over which the defendant exercises or exercised control, directly or indirectly, within the past five years, or in which the defendant has or had during that time any financial interest;

JP

- take all steps as requested by the Government to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant;

- undergo any polygraph examination the Government may choose to administer concerning such assets and to provide and/or consent to the release of the defendant's tax returns for the previous five years.

The defendant further agrees that the above information, as well as any of the defendant's financial statements and disclosures, will be complete, accurate, and truthful. Finally, the defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

## X.    AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This agreement is not meant, however, to prohibit the

United States Probation Office or the Court from considering any other acts and factors, which may constitute or relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any and waives objection to the inclusion of that restitution in any order issued by the Court.

## XI.    TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the defendant understands and acknowledges that this agreement does not apply to or in any way limit any pending or prospective proceedings related to the defendant's tax liabilities, if any, or to any pending or prospective forfeiture or other civil or administrative proceedings.

## XII. FORFEITURE

The defendant agrees to consent to the entry of a final forfeiture judgment against the defendant, pursuant to Fed. R. Crim. P. 32.2(b)(1), of all firearms and ammunition involved in or used in the commission of the offense(s) in COUNT(s) One of the Indictment, including a **Glock, model 27, .40 caliber pistol bearing serial number RWL012, a machine gun conversion device (MCD)** located on the back of the Glock, 27 and any accompanying magazines and ammunition.  For purposes of entering said order of forfeiture, the defendant acknowledges that a

nexus exists between said firearm(s) and the criminal offense(s) to which the defendant is pleading guilty.

The defendant agrees to take all steps as requested by the Government to pass clear title to forfeitable assets to the Government, and to testify truthfully in any judicial forfeiture proceeding. The defendant hereby waives the requirements of Fed. R. Crim. P. 32.2 regarding notice of the forfeiture in the Indictment, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant also waives the requirements of Fed. R. Crim. P. 43(a) with respect to the imposition of any forfeiture sanction carried out in accordance with this plea agreement. The defendant acknowledges that the defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise the defendant of this, pursuant to Fed. R. Crim. P. 11(b)(1)(J), at the time the defendant's guilty plea is accepted.

The defendant further waives all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including any.

Double Jeopardy challenges that the defendant may have to the entry of a Forfeiture Order before sentencing, and any claims, defenses or challenges arising under the Excessive Fines Clause of the Eighth Amendment resulting from the forfeiture imposed as a result of this Indictment and/or any pending or completed



administrative or civil forfeiture actions based upon the course of conduct that provides the factual basis for the forfeiture.

Non-Abatement of Criminal Forfeiture

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon the defendant's heirs, successors, and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full. To the extent that forfeiture pursuant to this agreement requires the defendant to disgorge wrongfully obtained criminal proceeds for the benefit of the defendant's victims, the defendant agrees that the forfeiture is primarily remedial in nature.

## XIII.   IMMIGRATION STATUS

The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the off offense(s) to which the defendant is pleading guilty. The defendant's guilty plea and conviction make it practically inevitable and a virtual certainty that the defendant will be removed or deported from the United States if



the defendant is not a citizen of the United States. Removal and other immigration consequences are the subject of a separate proceeding, however; and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Understanding all of this, the defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that plea may entail, even if the consequence is automatic removal from the United States.

## XIV.       DEFENDANT'S ACKNOWLEDGEMENT

I have read and understand the provisions of this plea agreement consisting of 20 pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence on my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO PROMISES OR REPRESENTATIONS OTHER THAN THOSE IN THE AGREEMENT HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

_____

I understand that this plea agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto. I have personally and voluntarily placed my initials on every page of this plea agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this plea agreement, both individually and as a total binding agreement.

4-19-2024
DATE

JAHLEO DEVONTA PUGH
Defendant

## XV.      COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses. My client has conveyed to me that my client understands this plea agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment.  I concur in the entry of the plea agreement on the terms and conditions set forth herein.


4/19/24
DATE


HUNTER D. BROWN
Defendant's Counsel


## XVI.     GOVERNMENT'S ACKNOWLEDGMENT

I have reviewed this matter and this plea agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.


PRIM ESCALONA
United States Attorney


4/23/24
DATE


JOHN CAMP AUSA
For:
DARIUS C. GREENE
Assistant United States Attorney

